Susan Martin (AZ #014226)
Jennifer Kroll (AZ #019859)
Michael M. Licata (AZ #033941)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Chris Falcone, Derivatively on Behalf of Taronis Technologies, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Robert Dingess, Scott Mahoney, Kevin Pollack, William W. Staunton, and Ermanno P. Santilli, <br><br> Defendants, <br><br> and, <br><br> Taronis Technologies, Inc., <br><br> Nominal Defendant. | Case No.: <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Chris Falcone ("Plaintiff"), by and through his undersigned counsel, derivatively on behalf of Nominal Defendant Taronis Technologies, Inc. ("Taronis" or the "Company"), submits this Verified Shareholder Derivative Complaint (the "Complaint"). Plaintiff's allegations are based upon his personal knowledge as to

himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by the Company with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits and matters of public record.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought in the right, and for the benefit, of Taronis against certain of its officers and directors seeking to remedy Defendants' (as defined below) breach of fiduciary duties that occurred from January 28, 2019 through the present (the "Relevant Period") and have caused substantial harm to Taronis.

## JURISDICTION AND VENUE

2.      Pursuant to 28 U.S.C. § 1331 and section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), this Court has jurisdiction over the claims asserted herein for violations of sections 10(b).  This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

3.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

4.      Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because: (a) the Company maintains its principal place of business in this District; (b) one or more of the defendants either resides in or maintains executive offices in this District; (c) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to the Company, occurred

in this District; and (d) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

### THE PARTIES

**Plaintiff**

5. ***Plaintiff Chris Falcone*** is, and was at relevant times, a shareholder of Taronis. Plaintiff will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

**Nominal Defendant**

6. Nominal Defendant Taronis is a Delaware corporation, and headquartered in Arizona.

**Director Defendants**

7. ***Defendant Robert Dingess*** ("Dingess") serves as Chairman of the Board of Directors ("Board') of the Company. Defendant Dingess is a named defendant in the securities class action entitled *Hatten v. Taronis Technologies, Inc., et al.*, Case 8:19-cv-00889 (M.D. Fla.) ("Securities Class Action").

8. ***Defendant Scott Mahoney*** ("Mahoney") serves as Chief Executive Officer ("CEO"), President, and a member of the Board. Defendant Mahoney is a defendant in the Securities Class Action.

9. ***Defendant Kevin Pollack*** ("Pollack") serves as a member of the Board. Defendant Pollack is a defendant in the Securities Class Action.

10. ***Defendant William W. Staunton*** ("Staunton") serves as a member of the Board. Defendant Staunton is a defendant in the Securities Class Action.

11. ***Defendant Ermanno P. Santilli*** ("Santilli") serves as Chief Technology Officer and a member of the Board of Directors of the Company.

12. Defendants Dingess, Mahoney, Pollack, Staunton and Santilli are herein referred to as the "Director Defendants."

3

**DUTIES OF DEFENDANTS**

13.  By reason of their positions as officers and/or directors of the Company, and because of their ability to control the business and corporate affairs of Taronis, Defendants owed Taronis and its investors the fiduciary obligations of trust, loyalty, and good faith.  The obligations required Defendants to use their utmost abilities to control and manage Taronis in an honest and lawful manner.  Defendants were and are required to act in furtherance of the best interests of Taronis and its investors.

14.  Each director of the Company owes to Taronis and its investors the fiduciary duty to exercise loyalty, good faith, and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.  In addition, as officers and/or directors of a publicly held company, Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, finances, and financial condition, as well as present and future business prospects, so that the market price of the Company's stock would be based on truthful and accurate information.

15.  To discharge their duties, the officers and directors of Taronis were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the affairs of the Company.  By virtue of such duties, the officers and directors of Taronis were required to, among other things:

(a)  ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b)  conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)  remain informed as to how Taronis conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make

reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(d) ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(e) ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

16. Each defendant, by virtue of his position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Taronis, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

## COMPANY OVERVIEW

**Background**

17. The Company purportedly operates as an energy company that offers technology solutions to create, process, and produce hydrogen-based fuel through the gasification of carb-rich liquids. Taronis formerly operated under the name of MagneGas Applied Technology Solutions, Inc.

## FALSE AND MISLEADING STATEMENTS

18. On January 28, 2019, the Company announced a purported contract for use of its metal cutting fuel by the City of San Diego, which received widespread attention. The Company announced this contract via press releases, which stated in relevant part:

5

Major New Client Win Southern California

TAMPA, Fla., Jan. 28, 2019 (GLOBE NEWSWIRE) -- MagneGas Applied Technology Solutions, Inc. ("MagneGas" or the "Company") (NASDAQ: MNGA), a leading clean technology company in the renewable resources and environmental solutions industries, announced today that the City of San Diego has elected to use MagneGas as its metal cutting fuel of choice, marking the first major city contract for the adoption of our metal cutting fuels. The City of San Diego has historically used acetylene to maintain a wide range of equipment used for waste removal, maintenance and infrastructure support and as of this contract, the City will immediately begin adoption of MagneGas' cleaner and safer fuel products. In addition, the San Diego Continuing Education Cultural Complex ("ECC") has elected to begin using MagneGas for the training and recertification of welders in the southern California market.

"We are grateful for the opportunity to serve the City of San Diego and the San Diego Continuing Education Cultural Complex," commented Scott Mahoney, Chief Executive Officer of MagneGas. "We have been steadily marketing our propriety metal cutting fuel for one year since acquiring Complete Welding of San Diego in January of last year."

"We have been presenting our unique capabilities through periodic live demonstrations of our technology, and we have been patiently supporting the local market as we gained the trust and confidence of some of the largest consumers of metal cutting fuels in the southern California market. The City of San Diego's decision to adopt our product is a major milestone in our growth efforts in California."

Mr. Mahoney concluded, "We are also very proud of our new relationship with the San Diego Continuing Education Cultural Complex. This is one of the premier training and recertification centers for welders in southern California, and we're proud to help shape this aspect of the curriculum going forward. This relationship will quickly serve as a powerful platform for promoting our products and building new client relationships across the southern part of the state. Being deeply involved in the educational aspect of this industry is strategically important because we have the responsibility to train the next generation of welders on the newest and safest technologies and have them carry it forward in their careers."

19. On this news, the Company's stock rapidly increased over 25% in the following two days.

20. On January 29, 2019, the Company amended its certificate of incorporation

6

to effectuate a reverse stock split, with every 20 shares of outstanding Company stock becoming 1 share of Company stock at the close of business on January 30, 2019.

21. On January 31, 2019, the Company changed its named from MagneGas Applied Technology Solutions, Inc. to Taronis.

22. On February 6, 2019, the Company announced a secondary stock offering registering over 3 million shares.

23. The statements referenced above were materially false and/or misleading because they misinterpreted and failed to disclose the following adverse facts pertaining to the Company's business and operations which were known or recklessly disregarded. Specifically, the Company made false and/or misleading statements and/or failed to disclose that: (i) it did not have a contract with the City of San Diego; (ii) it or its management had engaged in a scheme to defraud; and (iii) that as a result of the foregoing, its public statements were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

24. Following the rapid rise of the Company's stock price, the Company retracted its prior announcement about a contract with the City of San Diego.

25. On February 12, 2019, the Company issued a Form 8-K disclosing:

> On January 28, 2019, Taronis Technologies, Inc., formerly known as MagneGas Applied Technology Solutions, Inc. (the Company) issued a press release and filed a corresponding Current Report on Form 8−K with the SEC, which stated that the City of San Diego had elected to use MagneGas2 as its metal cutting fuel of choice and that this was the first major city contract for the adoption of the Company's metal cutting fuels. The Company has determined that it is necessary to correct its prior disclosure. The Company has an approval and a written authorization from the City of San Diego's Fleet Operations to move forward with the procurement of gas and other hard goods from the Company at three different locations within the City. This procurement covers more than one division within the municipality and was received from a city official with sufficient authority to approve the procurement process. In the welding supply and gas distribution business purchases and sales of hard goods and gases are typically made through a process whereby a purchaser receives a quote for goods from the seller and then places an order which is later

memorialized in a purchase order.  The Company treats purchase orders as contracts and made its prior disclosure with that treatment in view, however, the Company does not have any formal binding contracts, agreements or long−term purchase commitments with the City of San Diego beyond the existing approval, nor any commitment that any of the Company's products will be purchased as the products of choice for their respective applications.

26.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the Company has suffered significant losses and damages.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

27.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties and gross mismanagement by Defendants.

28.     Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

29.     Plaintiff is a current owner of the Company stock and has continuously been an owner of Company stock during Defendants' wrongful course of conduct alleged herein.  Plaintiff understands his obligation to hold stock throughout the duration of this action and is prepared to do so.

30.     During the illegal and wrongful course of conduct at the Company and through the present, the Board consisted of Defendants Dingess, Mahoney, Pollack and Staunton.  Because of the facts set forth throughout this Complaint, demand on the Company Board to institute this action is not necessary because such a demand would have been a futile and useless act.

31.     The Company Board is currently comprised of five (5) members – Dingess, Mahoney, Pollack, Staunton and Santilli.  Thus, Plaintiff is required to show that a majority of the Director Defendants, i.e., three (3), cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

32. The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

33. The Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. For the reasons that follow, and for reasons detailed elsewhere in this complaint, Plaintiff has not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

34. Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

35. Each of the Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

**The Demand Defendants Are Not Independent or Disinterested**

**Defendant Mahoney**

36. Defendant Mahoney is not disinterested or independent, and therefore, is incapable of considering demand because Mahoney (as CEO of the Company) is an employee of the Company who derives substantially all of his income from his employment with Taronis, making him not independent. As such, Mahoney cannot independently consider any demand to sue himself for breaching his fiduciary duties to Taronis, because that would expose him to liability and threaten his livelihood.

37. This lack of independence and financial benefits received by Mahoney

9

renders him incapable of impartially considering a demand to commence and vigorously prosecute this action.

38. Defendant Mahoney is a defendant in the Securities Class Action.

39. As such, Defendant Mahoney cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten his livelihood.

**Defendant Dingess**

40. Defendant Dingess is a defendant in the Securities Class Action.

41. As such, Defendant Dingess cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability.

**Defendant Pollack**

42. Defendant Pollack is a defendant in the Securities Class Action.

43. As such, Defendant Pollack cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability.

**Defendant Staunton**

44. Defendant Staunton is a defendant in the Securities Class Action.

45. As such, Defendant Staunton cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability.

**Defendant Santilli**

46. Defendant Santilli is not disinterested or independent, and therefore, is incapable of considering demand because Santilli (as Chief Technology Officer of the Company) is an employee of the Company who derives substantially all of his income from his employment with Taronis, making him not independent. As such, Santilli cannot independently consider any demand to sue himself for breaching his fiduciary

duties to Taronis, because that would expose him to liability and threaten his livelihood.

47. This lack of independence and financial benefits received by Santilli renders him incapable of impartially considering a demand to commence and vigorously prosecute this action.

48. Defendant Santilli is a defendant in the Securities Class Action. As such, Defendant Santilli cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten his livelihood.

**FIRST CAUSE OF ACTION**

**(Against the Director Defendants for Breach of Fiduciary Duties)**

49. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

50. Defendants owe the Company fiduciary obligations. By reason of their fiduciary relationships, Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

51. Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

52. Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, Defendants breached their fiduciary duties of loyalty and good faith as they caused the Company to make false and/or misleading statements that: (i) the Company did not have a contract with the City of San Diego; (ii) the Company or its management had engaged in a scheme to defraud; and (iii) that as a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

53. As a direct and proximate result of Defendants' failure to perform their

fiduciary obligations, the Company has sustained significant damages.  As a result of the misconduct alleged herein, Defendants are liable to the Company.

54.	As a direct and proximate result of Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs associated with defending securities lawsuits, severe damage to the share price of the Company, resulting in an increased cost of capital, the waste of corporate assets, and reputational harm.

**SECOND CAUSE OF ACTION**

**(Against the Director Defendants for Waste of Corporate Assets)**

55.	Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein

56.	The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Period.  It resulted in continuous, connected, and ongoing harm to the Company.

57.	As a result of the misconduct described above, the Director Defendants wasted corporate assets by, inter alia: (i) paying excessive compensation, bonuses, and termination payments to certain of its executive officers; (ii) awarding self-interested stock options to certain officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions.

58.	As a result of the waste of corporate assets, the Director Defendants are liable to the Company.

59.	Plaintiff, on behalf of Taronis, have no adequate remedy at law.

**THIRD CAUSE OF ACTION**

**(Against the Director Defendants for Gross Mismanagement)**

60.	Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

61.	By their actions alleged herein, the Director Defendants, either directly or

through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation.

62. As a direct and proximate result of the Director Defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained significant damages in excess of hundreds of millions of dollars.

63. Because of the misconduct and breaches of duty alleged herein, the Director Defendants are liable to the Company.

## FOURTH CAUSE OF ACTION

### (Against the Director Defendants for Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5)

64. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

65. During the relevant period, Defendants disseminated or approved public statements that failed to disclose the truth about the Company's business and corporate affairs as set forth above, and thus Taronis' public statements were materially false and/or misleading at all relevant times. Thus, the price of the Company's shares was artificially inflated due to the deception of the Director Defendants.

66. As such, Defendants caused the Company to violate section 10(b) of the Exchange Act and SEC Rule 10b-5 in that they:

(a) employed devices, schemes, and artifices to defraud; and

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

67. As a result of Defendants' misconduct, the Company is suffering litigation expense and reputational harm in the marketplace in violation of section 10(b) of the Exchange Act and SEC Rule 10b-5.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

A. Determining that this action is a proper derivative action maintainable under law, and that demand is excused;

B. Awarding, against all Defendants and in favor of the Company, the damages sustained by the Company as a result of Defendants' breaches of their fiduciary duties;

C. Directing the Company to take all necessary actions to reform and improve its corporate governance and internal procedures, to comply with the Company's existing governance obligations and all applicable laws and to protect the Company and its investors from a recurrence of the damaging events described herein;

D. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable

Dated this 25th day of June, 2019

**MARTIN BONNETT, PLLC**

By: /s/ Jennifer Kroll
Susan Martin
Jennifer Kroll
Michael M. Licata
4647 N. 32nd St., Suite 2010
Phoenix, 85018
Tel: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna (*pro hac vice to be filed*)
440 Park Avenue South, 5th Floor
New York, NY 10016

Tel: (212) 983-1300
Fax: (212) 983-0383
tjmckenna@gme-law.com

*Attorneys for Plaintiff*

## VERIFICATION

I, CHRIS FALCONE, am a plaintiff in the within action. I have reviewed the allegations made in this Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 15th day of June 2019.

_____
CHRIS FALCONE