**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Taronis Technologies, Inc. Shareholder Derivative Litigation | No.: CV-19-04547-PHX-GMS **LEAD CASE** Consolidated with No. CV-19-05233-PHX-GMS |
| This Document Relates To: All Actions | **ORDER** |

Before the Court is Plaintiffs' Motion for Final Approval of Settlement and for an Award of Attorneys' Fees and Reimbursement of Expenses. (Doc. 40.) For the following reasons, the motion is granted.

## BACKGROUND

Taronis Technologies, Inc., now known as BBHC, ("Taronis" or "BBHC") is an energy company that offers technology solutions to create, process, and produce hydrogen-based fuel.

Plaintiffs allege that Defendants breached their fiduciary duties by making or causing a series of false statements about the company. Plaintiffs allege that on January 28, 2019 Taronis disclosed in a press release that the City of San Diego had elected to use a Taronis product as its fuel of choice. (Doc. 1 at 5–6.) The market price of Taronis common stock promptly increased over 25% after news of the San Diego contract was published.

*Id.* at 6. However, Plaintiffs allege that the Company's disclosure about the contract with the City of San Diego was entirely false. *Id.* at 7. They claim that Defendants knew the press release was false but released it to artificially inflate the common stock price. Plaintiffs allege that Defendants waited until February 12, 2019 to clarify the Press Release and that the value of the company's securities suffered significant damage as a result. *Id.* at 7–8.

The Court granted preliminary approval of the parties' proposed settlement on November 20, 2020. (Doc. 37.) Plaintiffs now move for final approval of settlement. An action arising out of the same alleged misconduct is pending in the United States District Court for the District of Delaware. The Plaintiffs in that case ("Delaware Plaintiffs") submitted an objection to the final approval of the settlement and award of attorneys' fees and expenses. (Doc 42.)

## DISCUSSION

### I.   Legal Standard

"A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23.1(c). After preliminary approval, "notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." *Id.* Although there is little Ninth Circuit authority interpreting Rule 23.1(c), "approval of a derivative action appears to be a two-step process, similar to that employed for approving class action settlements, in which the Court first determines whether a proposed settlement deserves preliminary approval and then, after notice of the settlement is provided to class members, determines whether final approval is warranted." *In re MRV Commc'ns, Inc. Derivative Litig.*, No. CV 08-03800 GAF MANX, 2013 WL 2897874, at *2 (C.D. Cal. June 6, 2013); *see In re HQ Sustainable Mar. Indus., Inc.*, No. C11-0910RSL, 2013 WL 3191867, at *1 (W.D. Wash. June 20, 2013); *In re NVIDIA Corp.*, No. C-06- 06110-SBA(JCS), 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008). A court must assess whether a settlement is the product of overreaching or collusion by or between the negotiating parties, and whether the settlement

1    taken as a whole "is fundamentally fair, adequate and reasonable." *In re Hewlett-Packard*

2    *Co. S'holder Derivative Litig.*, 716 F. App'x 603, 605 (9th Cir. 2017); *Talley v. Mann*, No.

3    CV 11-5003 GAF (SSX), 2012 WL 12918344, at *2 (C.D. Cal. Sept. 12, 2012). These

4    safeguards are "intended to prevent shareholders from suing in place of the corporation in

5    circumstances where the action would disserve the legitimate interests of the company or

6    its shareholders." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 532 n.7 (1984).

7    **II.    Analysis**

8            Here, the settlement is the product of serious, informed, non-collusive negotiations,

9    with no obvious deficiency or preferential treatment. Both sides are represented by

10   experienced counsel, and the parties engaged in negotiations with a professional mediator.

11   (Doc. 40-1 at 6.) The parties have litigated this case since June 2019, and their briefing

12   demonstrates that they have thoroughly considered the strengths and weaknesses of the

13   asserted claims. (Doc. 40 at 22–23.) Therefore, the proposed settlement agreement appears

14   to be the product of serious, informed, non-collusive negotiations.

15           Moreover, the Settlement Agreement is fair, reasonable, and adequate. The

16   proposed agreement confers substantial benefit on the corporation and its shareholders by

17   establishing safeguards in the corporate structure that can prevent future ethical violations.

18   The agreement provides that "BBHC shall adopt a resolution and draft a charter formally

19   creating a Board-level Risk and Disclosure Committee" tasked with "monitoring BBHC's

20   compliance with all public reporting required of BBHC as well as internal risk assessment

21   and internal reporting." (Doc 31-1 at 25.) These changes confer a sufficient benefit;

22   "[c]ourts have recognized that corporate governance reforms such as those achieved here

23   provide valuable benefits to public companies." *In re NVIDIA Corp.*, 2008 WL 5382544,

24   at *3; *see In re Rambus Inc.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal.

25   Jan. 20, 2009) (approving a settlement where the benefit was a corporate reform addressing

26   the source of the alleged violations).

27           The Delaware Plaintiffs' Objection does not undermine these conclusions. For the

28   reasons set forth above, the proposed settlement is fair, adequate, and reasonable. The

parties' published notice adequately placed shareholders on notice that resolution of this litigation may affect their rights in other matters, specifying:

> If you are a current holder of BBHC common stock and do not take steps to appear in this action and object to the proposed settlement, you will be bound by the Final Judgment of the Court and will forever be barred from raising an objection to such settlement in this or any other action or proceeding, and from pursuing any of the Released Claims.

(Doc. 41-2 at 6.) It also explained that all capitalized terms used in the notice were defined in the Stipulation and included a link to reach the agreement. The Released Claims include the related action in Delaware arising out of the same incident.[1] Shareholders were thus alerted that they could lose rights in other litigations by failing to object here. The Delaware Plaintiffs offer no authority establishing that such notice becomes unfair or ineffective because it does not include the existence of specific actions in other jurisdictions. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation omitted).

The Parties' agreed-to corporate governance changes are also adequate consideration. The parties agreed to create protocols addressing compliance with public-reporting requirements because that was the nature of the failure in this case. The fact that these changes do not explicitly address press releases, the exact form of non-compliance here, does not render the changes nonprotective. The Court is aware of no requirement that corporate governance reform exactly match the factual allegations in a case to be deemed effective, and the Delaware Plaintiffs suggest none.

---

[1] The Stipulation defines Released Claims to include: "any and all claims, rights, demands, causes of action or liabilities of any kind, nature and character whatsoever . . . against any of the Released Persons that have been, could have been, or could in the future be, asserted in the Derivative Actions . . . that arise out of or are related, directly or indirectly, in any way to: (a) any of the facts, matters, occurrences, actions, practices, conduct, events, transactions, statements, disclosures, representations, misrepresentations, omissions, or failures to act that were involved, . . . or (b) that would have been barred by res judicata had the Derivative Actions been fully litigated to a final judgment." (Doc. 30-1 at 8–9.)

Nor does the timeline of the parties' negotiation suggest that the agreement was not the product of an arms-length negotiation. The Delaware Plaintiffs' characterization of the parties' preliminary negotiations as a "concealed" or "suspicious process" is not supported. (Doc. 42 at 16.) The parties specify that these preliminary settlement negotiations were presided over telephonically by a mediator, and as discussed above, the ultimate settlement was reached with the presence of a Zoom mediator. (Doc. 40-1 at 6.) The bare fact that the parties conducted preliminary discussions does not undermine the independence of their agreement.

Finally, the lack of formal discovery in this case does not preclude the parties from reaching a fair and adequate settlement. The extent of discovery completed is one factor among many relevant to whether a court may properly find a settlement fair and reasonable. *Officers for Just. v. Civ. Serv. Comm'n of S. F.*, 688 F.2d 615, 625 (9th Cir. 1982). Indeed, the Ninth Circuit has affirmed that formal discovery is not a "necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement. *Linney v. Cellular Ala. Part.*, 151 F.3d 1234, 1239 (9th Cir. 1998). As the parties discussed the risk and potential expense of further litigation at length in their briefing and demonstrated that they had considered the strengths and weaknesses of their relative positions in coming to a resolution, (Doc. 40 at 22–23), lack of formal discovery does not bar the settlement.

## III.   Attorneys' Fees

Attorneys who prosecute a shareholder derivative action that confers "substantial benefit" on the corporation are entitled to an award of attorneys' fees. *See Mills v. Elec. Auto-Life Co.*, 396 U.S. 375, 396 (1970). Courts have consistently approved attorneys' fees and expenses in shareholder actions where the plaintiffs' efforts resulted in corporate governance reforms but no monetary relief. *In re Rambus Inc.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ($2 million dollar fee award). Here, the settlement awards counsel $350,000.00. The award was agreed to after a double-blind proposal by a mediator, and the proposal occurred after the parties had agreed to the other

terms of settlement. (Doc. 40-1 at 4.) The Court finds that the fees and expenses awarded to Plaintiffs' Counsel by the agreement are reasonable and the product of arms-length negotiation.

Further, Plaintiffs may each properly receive $2,000 from the Fee and Expense Award. "Incentive awards are fairly typical in class action cases," and the Ninth Circuit has approved of their use in derivative litigation. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). An award of $2,000 appropriately recognizes and compensates Plaintiffs for time spent on the action without the risk of overcompensating.

## CONCLUSION

This matter came before the Court for a hearing pursuant to the Order of this Court entered on November 20, 2020 ("Preliminary Approval Order"), on the application of the Parties for approval of the Settlement set forth in the Stipulation of Settlement executed by counsel for the Parties as of October 5, 2020 (the "Stipulation"). All capitalized terms used herein have the meanings set forth and defined in the Stipulation.

The Court has received a declaration (1) attesting to the posting of the Notice and the Stipulation of Settlement on the Company's website, (2) the issuance of a press release with the Notice on GlobeNewswire, and (3) the issuance ten days thereafter of a second press release with the Notice on PRNewswire. Therefore, due and adequate notice having been given to BBHC Shareholders as required by the Preliminary Approval Order, and the Court having considered all papers filed and proceedings in the Derivative Actions and otherwise being fully informed of the matters herein, and good cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

1. This Court has jurisdiction over the subject matter of the Derivative Actions, including the terms and conditions of the Stipulation and all exhibits thereto, and over Parties to the Stipulation.

2. Based on evidence submitted by BBHC's counsel, the Court finds that the Notice was posted and published according to this Court's Preliminary Approval Order.

This Court further finds that the form and content of the Notice, as previously preliminarily approved by the Court, complied with the requirements of Federal Rule of Civil Procedure 23.1, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth therein.

3.      A full opportunity has been offered to BBHC Shareholders to object to the proposed Settlement and to participate in the hearing thereon, and, as such, all BBHC Shareholders are bound by this Order.

4.      The Settlement is found to be fair, reasonable, adequate and in the best interests of BBHC and BBHC Shareholders.

5.      The Court finds, for settlement purposes, that: (1) the Derivative Actions were properly brought as shareholder derivative suits pursuant to Federal Rule of Civil Procedure 23.1; and (2) Plaintiffs Falcone and Manley adequately represented the interests of BBHC Shareholders in enforcing the rights of BBHC.

6.      The Stipulation and the terms of the proposed Settlement set forth therein are, in all respects, hereby finally approved. The Parties to the Stipulation are directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation.

(A)      In accordance with Paragraph 1(o) of the Stipulation, for purposes of this Final Judgment the term "Released Persons" means: (a) BBHC and the Defendants, as well as any person, partnership, bank, firm, corporation, limited liability company, trust or other entity or organization in which BBHC or any Defendant has a controlling interest or which is or was related to or affiliated with any of them; and (b) with respect to each of the Persons in subsection (a), their respective past, present or future directors and officers, including but not limited to Robert Dingess, Scott Mahoney, Kevin Pollack, William W. Staunton, and Ermanno P. Santilli; and their respective past, present or future employees, insurers, reinsurers, attorneys, agents, partners, principals, advisors, investment advisors, auditors, accountants, trustees, underwriters, investment bankers, subsidiaries, parents, successors, predecessors, heirs, Immediate Family, and anyone acting or purporting to act for or on behalf of any of them or their successors.

(B)     In accordance with Paragraph 1(n) of the Stipulation, for purposes of this Final Judgment the term "Released Claims" means: any and all claims, rights, demands, causes of action or liabilities of any kind, nature and character whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law, or any other law, rule or regulation, whether foreign or domestic, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether known or unknown including, without limitation, Unknown Claims (as defined below) (collectively "Claims") against any of the Released Persons that have been, could have been, or could in the future be, asserted in the Derivative Actions or in any other derivative action in any other forum or proceeding by any Person (including but not limited to Plaintiffs) derivatively on behalf of BBHC, or by BBHC itself against any of the Released Persons that arise out of or are related, directly or indirectly, in any way to:

  a.     any of the facts, matters, occurrences, actions, practices, conduct, events, transactions, statements, disclosures, representations, misrepresentations, omissions, or failures to act that were involved, set forth, referred to, asserted, alleged, or that could have been alleged in the Derivative Actions including, but not limited to, claims for securities law violations, breach of fiduciary duty, abuse of control, mismanagement, gross mismanagement, waste of corporate assets, unjust enrichment, contribution and indemnification, money damages, disgorgement, any and all demands, actions, damages, claims, rights or causes of action, or liabilities whatsoever; or

  b.     that would have been barred by res judicata had the Derivative Actions been fully litigated to a final judgment, provided that Released Claims shall not include claims to enforce the Settlement. Notwithstanding the foregoing, "Released Claims" also does not include the claims asserted

in the Securities Class Action, *Zhu, et al v. Taronis Technologies, Incorporated, et al.*, Civil Action No. 2:19-cv-04529-PHX-GMS (D. Ariz.).

7. In accordance with Paragraph 1(r) of the Stipulation, for purposes of this Final Judgment the term "Unknown Claims" shall mean: any Released Claims that Plaintiffs, BBHC or any BBHC Shareholder (claiming in the right of, or on behalf of, BBHC) does not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this Settlement. Unknown Claims include those claims in which some or all of the facts comprising the claim may be suspected, or even undisclosed or hidden. With respect to any and all Released Claims, Plaintiffs and BBHC stipulate and agree that, upon the Effective Date, they shall expressly waive, and every BBHC Shareholder shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her would have materially affected his or her settlement with the debtor or released party.

Plaintiffs and BBHC shall expressly waive, and every BBHC Shareholder shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable or equivalent in effect to California Civil Code § 1542.

Plaintiffs, BBHC and any BBHC Shareholder may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs and BBHC shall expressly have, and every BBHC Shareholder shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all

Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs and BBHC acknowledge, and every BBHC Shareholder shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waivers were separately bargained for and a key element of the Settlement.

8.    The Derivative Actions and all claims contained therein, as well as all Released Claims, are hereby dismissed with prejudice in their entirety, on the merits, as against all Released Persons. Each party shall bear its own fees and costs, except as set forth herein.

9.    Upon the Effective Date, Plaintiffs, BBHC and all current and former BBHC Shareholders, on behalf of themselves, and each of their respective personal representatives, Immediate Family, trustees, heirs, executors, administrators, parent entities, associates, affiliates, predecessors, successors and assigns, and any other Person claiming (now or in the future) to be acting on behalf of any of them, shall be deemed to have, and by operation of this Final Judgment shall have, fully, finally, and forever released, relinquished, settled and discharged all Released Claims against the Released Persons and shall be permanently barred and enjoined from instituting, commencing, participating in, continuing, maintaining, asserting or prosecuting any Released Claim against any of the Released Persons, or assisting any Person in instituting, commencing, participating in, continuing, maintaining, asserting or prosecuting any Released Claim against any of the Released Persons. Nothing herein shall in any way impair or restrict the rights of any of the Parties to enforce the terms of this Stipulation.

10.    Upon the Effective Date, the Released Persons shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released,

relinquished, and discharged Plaintiffs and Plaintiffs' Counsel from all claims (including Unknown Claims), arising out of, relating to, or in connection with the defense, institution, prosecution, assertion, settlement, or resolution of the Released Claims. Nothing herein shall in any way impair or restrict the rights of any of the Parties to enforce the terms of this Stipulation.

11.   Plaintiffs' Counsel in the action are hereby awarded attorneys' fees and a reimbursement of expenses collectively totaling $350,000.00 ("Fee and Expense Award"). This Court finds that this amount is fair and reasonable under the facts and circumstances of this case. Payment of such award of attorneys' fees and reimbursement of expenses shall be made in accordance with the provisions of the Stipulation.

12.   Plaintiffs are each awarded Service Awards in the amount of $2,000.00, which shall be funded from the Fee and Expense Award.

13.   This Final Judgment, the Stipulation and all of its provisions, and any negotiations, proceedings or agreements relating to the Stipulation and the Settlement, and any matters arising in connection with such negotiations, proceedings or agreements, and any acts performed or documents executed pursuant to or in furtherance of this Stipulation:

(A)   shall not be offered or received against any of the Released Persons as evidence of a presumption, concession, or admission of any kind;

(B)   shall not be offered or received against any of the Released Persons as evidence of an admission by any of those Released Persons with respect to the truth of any fact alleged in any of the Derivative Actions or the validity of any Released Claim, or the deficiency of any defense that has been or could have been asserted, or of any liability, negligence, fault, or wrongdoing of the Released Persons;

(C)   shall not be offered or received against the Released Persons as evidence of any fault, misrepresentation, omission or other actionable conduct with respect to any statement or written document approved or made by any of the Released Persons;

(D)   shall not be offered or received against the Released Persons as evidence of any liability, negligence, fault or wrongdoing, or in any way referred to for any

other reason as against any of the Released Persons, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that if this Stipulation is approved by the Court, the Released Persons may refer to it to effectuate the release of Released Claims and other liability protections granted them hereunder;

(E)     shall not be construed against any of the Released Persons as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial;

(F)     shall not be construed as or received in evidence as an admission, concession or presumption against Plaintiffs that any of their claims are without merit, or that any defenses asserted by the Defendants have any merit, or that damages recoverable in the Derivative Actions would not have exceeded the Settlement Amount; and

(G)     shall not, in the event of a Termination, be used by any Party for any purpose in any trial in any of the Derivative Actions, provided that, any Party may file or introduce this Stipulation and/or the Final Judgment in any action or proceeding that may be brought to enforce the terms of this Stipulation and/or the Final Judgment, or any action or proceeding related to rights or claims of Defendants relating to indemnification and/or advancement in connection with the Derivative Actions.

14.     Except in the event of a Termination, the Parties agree not to assert under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule or regulation, that the Derivative Actions were brought or defended in bad faith or without a reasonable basis. The Parties agree that the terms of this Settlement were negotiated at arms' length and in good faith by the Parties and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with their respective experienced legal counsel.

15.     Without in any way affecting the finality of this Final Judgment, this Court shall retain jurisdiction over the Parties to the Stipulation and the Released Parties with respect to all matters related to the Derivative Actions and over all proceedings related to

the implementation and enforcement of the terms of the Stipulation, including all matters pertaining to requests for attorneys' fees and expenses.

16.    Any order regarding an award of attorneys' fees and expenses, or any appeal, modification or change of such an order, shall in no way disturb or affect the finality of this Final Judgment and shall be considered separate from this Final Judgment.

17.    This Settlement shall be a final and complete resolution of all disputes among the parties. No party to the Stipulation may assert in any forum that the Derivative Actions were brought, commenced or prosecuted by the Plaintiffs or their counsel in bad faith or that the Derivative Actions were not filed or raised in good faith or were not settled voluntarily after negotiating at arm's-length and in good faith after consultation with competent legal counsel.

18.    Nothing in this Final Judgment constitutes or reflects a waiver, release or discharge of any rights or claims of Defendants against their insurers, or their insurers' subsidiaries, predecessors, successors, assigns, affiliates, or representatives.

19.    The Parties are hereby authorized, without further approval of the Court, to unanimously agree to and adopt in writing such amendments, modifications, and expansions of the Stipulation and all exhibits attached thereto, provided that such amendments, modifications, and expansions of the Stipulation are done in accordance with the terms of Paragraph 20 of the Stipulation, are not materially inconsistent with this Final Judgment and do not materially limit the rights of BBHC Shareholders or the Released Persons under the Stipulation.

20.    In the event that the Settlement does not become effective in accordance with the terms of the Stipulation, then this Final Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated, and in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation, and the provisions of Paragraph 16 of the Stipulation shall apply.

21.    The provisions of this Final Judgment constitute a full and complete

adjudication of the matters considered and adjudged herein, and the Court determines that there is no just reason for delay in the entry of judgment. The Clerk is hereby directed to immediately enter this Final Judgment.

Dated this 5th day of March, 2021.

G. Murray Snow
Chief United States District Judge